IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF : | |
| THE PETITION OF : | CIVIL ACTION |
| WEEKS MARINE, INC., AS OWNER : | |
| OF THE VESSEL "WEEKS 573" : | |
| FOR EXONERATION FROM AND : | |
| LIMITATION OF LIABILITY, : | No. 10-1794 |
| Petitioner. : | |

MEMORANDUM

Schiller, J.                                                                                                 July 29, 2011

Bench trial or jury trial? Normally, this is not a difficult question to answer. However, "[w]hen the admiralty tradition collides with the right to a jury trial under the saving to suitors clause, there is inevitable tension." 3 Edward V. Cattell, Jr., *Benedict on Admiralty* § 2-16 (2010). Sensing this tension, the Court sought briefing on the issue of whether it would be proper for the negligence claim of claimant Michael Kilroy, who was injured while helping to move a vessel owned by Weeks Marine, Inc., to be tried to a jury. The parties have briefed the issue. The limitation of liability action filed by Weeks Marine will be tried without a jury.

I.  BACKGROUND

On October 22, 2008, Kilroy was working as a pile driver at the Valero Paulsboro Refinery on the Delaware River. (Kilroy Claim ¶¶ 6-7.) Weeks Marine owned the vessel Crane Barge Weeks 573 ("Weeks 573"), which Valero had ordered to be moved for a Valero ship that needed to enter the refinery. (*Id*. ¶¶ 11, 15.) Hays Tug & Launch Service and Salem Tugboat Corporation owned the M/V High Roller. (*Id*. ¶¶ 9-10.) Workers were moving the vessels that were attached to Valero's dock. The Weeks 573 was attached using 2" synthetic braided spring-lines that were attached to

piles at the end of the pier being controlled by the cleats on the M/V High Roller and the cleats on the Weeks 573. (*Id.* ¶ 16.) One of these spring-lines snapped back about fifteen feet and caught Kilroy in the lower leg while he was working as a member of the crew moving the vessels. (*Id.* ¶¶ 17-18.) Kilroy was knocked into the air and smashed his head on the deck of the M/V High Roller. (*Id.* ¶ 18.) He alleges negligence on the part of Hays, Salem, Weeks Marine and Valero for allowing the barge to drift, causing the line to snap, and thereby severely injuring Kilroy. (*Id.* ¶ 19.) Kilroy originally filed a lawsuit in the Philadelphia County Court of Common Pleas and he demanded a jury trial.

Weeks Marine filed a Complaint for Exoneration from and Limitation of Liability in this Court. In the Complaint, Weeks Marine stated that it was the sole owner of the Weeks 573. (Limitation Compl. ¶ 8.) Valero hired Weeks Marine to construct upgrades to Berth 2 at the Valero Refinery; Kilroy worked for Weeks Marine as a marine construction worker on that project. (*Id.* ¶¶ 10-11.) On October 22, 2008, Kilroy was allegedly injured as the Weeks 573 was being moved by the M/V High Roller. (*Id.* ¶ 12.) Kilroy received worker's compensation from Weeks Marine as a result of the injuries he suffered. (*Id.* ¶ 14.) Weeks Marine denies liability for the accident, claiming that "any such loss, damage, injury or death was occasioned and incurred wholly without the fault, privity or knowledge of Weeks." (*Id.* ¶ 19.) In the alternative, it also sought to limit its liability in accordance with the Limitation of Shipowners' Liability Act, 46 U.S.C. §§ 30501-30512. (*Id.* ¶ 21.) Weeks Marine claimed that its interest in the vessel and its cargo was $750,000. (*Id.* at 6.)

On April 26, 2010, the Court issued an Order that set a surety of $750,000 as security for Weeks Marine's interest in the Weeks 573 and its freight; required persons asserting claims to file and serve their claims or risk default; and "restrained, stayed, and enjoined" the "further prosecution

of any and all" lawsuits commenced, including Kilroy's Complaint filed in the Philadelphia Court of Common Pleas. (April 26, 2010 Order ¶¶ 1,3, 5, *In re Weeks Marine*, Civ. A. No. 10-1794 (E.D. Pa. Apr. 26, 2010), ECF No. 6.)  As directed by this Court's Order, Kilroy filed a claim for a determination of liability.  Kilroy also objected that the $750,000 surety value of the vessel was too low and did not state the true value of the vessel and its cargo.  (Kilroy Claim ¶ 24.)

Because the issue of whether this case could proceed as a jury trial could not be decided at the initial pre-trial conference, the Scheduling Order listed the case as a jury trial.  On March 3, 2011, counsel for Hays and Salem wrote to this Court requesting that the Scheduling Order be amended to reflect that the trial should proceed without a jury.  The request was seconded by counsel for Weeks Marine.  On March 4, 2011, counsel for Kilroy, the only party seeking a jury trial, responded to the Court that, "I have no objection to the request of [counsel] to issue an Amended Scheduling Order listing this case for a bench trial."  All counsel were copied on that letter.  Therefore, that same day, the Court issued an Amended Scheduling Order listing the case as a bench trial.  However, like two ships passing in the night, as this Court's Amended Scheduling Order navigated the waters to counsel for Kilroy, a letter was shipped off to this Court from counsel for Kilroy.  Dated March 7, 2011, the letter stated, "[a]t this point, my position is that no Amended Scheduling Order should be granted changing this matter from a jury trial to a bench trial."  The Court was taken aback because there was no explanation for why Kilroy took inconsistent positions mere days apart.  Furthermore, this second letter to the Court mysteriously included no indication that opposing counsel were copied or were aware of this change in course.

With the parties at loggerheads, the Court ordered briefing on the issue of whether this litigation should proceed as a bench trial or jury trial.

**II.     DISCUSSION**

The Limitation of Liability Act ("the Act") limits the "liability of the owner of a vessel for any claim, debt or liability" to "the value of the vessel and pending freight." 46 U.S.C. § 30505. If the Act applies and a limitation of liability complaint is filed, "[t]hereafter in a proceeding known as a *concursus,* the district court, sitting in admiralty without a jury, determines whether there was negligence; if there was negligence, whether it was without the privity and knowledge of the owner; and if limitation is granted, how the [limitation] fund should be distributed." *Gorman v. Cerasia*, 2 F.3d 519, 524 (3d Cir. 1993); *see Compl. of Consol. Coal Co.*, 123 F.3d 126, 132 (3d Cir. 1997). Furthermore, the Federal Rules of Civil Procedure "do not create a right to a jury trial on issues in a claim that is an admiralty or maritime claim." Fed. R. Civ. P. 38(e). This denial of the right to a jury trial in admiralty cases creates a conflict with the saving to suitors clause of 28 U.S.C. § 1333(1), the admiralty jurisdiction statute, which provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." *See Gorman*, 2 F.3d at 524 (internal quotations omitted). This conflict has led to two judicially created exceptions to the admiralty court's exclusive jurisdiction over limitation actions. The first exception applies if the value of the vessel and its cargo exceeds the aggregate of the total number of claims filed against the owner. *Id*. (citing *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 152 (1957)). The second exception applies when a single claimant brings an action against the shipowner seeking damages in excess of the value of the vessel. In such a case, the district court must lift the stay provided that the claimant stipulates that the admiralty court has exclusive jurisdiction to determine all issues concerning the owner's limitation of liability under the Act. *Id*.

(citations omitted). Specifically, the claimant must waive any claim of res judicata relevant to the issue of limited liability based on any judgment obtained in the state court, and concede the shipowner's right to litigate all issues relating to limitation in the federal limitation proceeding. *Id*.

Neither exception applies here. However, Kilroy claims that he is entitled to a jury trial under the Jones Act. Pursuant to the Jones Act, "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104. Specifically, Kilroy argues that he is entitled to a jury trial based on *Shade v. Great Lakes Dredge & Dock Co.*, 154 F.3d 143 (3d Cir. 1998). In *Shade*, the Third Circuit considered whether the plaintiff was a "seaman" under the Jones Act, applying a two-part test originally set forth in *Chandris, Inc. v. Latsis*, 515 U.S. 347 (1995). The employee must first demonstrate that his or her duties contribute to the function of the vessel or to the accomplishment of its mission, although there is no requirement that the employee must perform the work of the vessel. *Shade*, 154 F.3d at 148. Under the second part of the *Chandris* test, an "employee must demonstrate that he or she has a connection to a vessel . . . that is substantial in terms of both its duration and nature." *Id*. at 150. Kilroy relies on *Shade's* statement that whether an employee meets the definition of a seaman is often fact specific and best left to the jury. (Kilroy Br. at 1.) Kilroy argues, based on cites to the record, that he was performing the work of the vessel and aiding the Weeks 573 in navigation, or "[a]t the very least, there is a genuine issue of material fact for the jury to determine seaman status." (*Id*. at 3.)

Kilroy's status as a seaman might be up in the air, but to borrow a land-based cliché, he has put the cart before the horse. His status as a seaman assumes that he has brought a claim under the Jones Act, a dubious assumption given that his state-law claim fails to mention the Jones Act.

5

Regardless, this Court issued an order enjoining any litigation from proceeding while Weeks Marine's limitation of liability action was pending. Thus, even if Kilroy qualifies as a seaman under the Jones Act, that status provides no basis for seating a jury to decide the limitation of liability action. The Court is still required to try the limitation action without a jury, including addressing the issue of negligence.

The crew advocating for a bench trial notes, "depending on the outcome of the limitation action, the claimants may continue with their other actions in the forum or forums they initially selected, and may try their claims to a jury, if they requested a jury trial." (Mem. of Law of Weeks Marine, Hays Launch & Tug Service and Salem Tugboat Corp. in Favor of Non-Jury Concursus at 5.) Nonetheless, Kilroy suggests that the Court can postpone the disposition of the limitation of liability action until "after the plaintiff's claims have been liquidated and found to exceed the amount of the claimed limitation of liability fund." (Kilroy Br. at 5.)

There are numerous problems with Kilroy's argument. First, there is currently an injunction in place, so there is no other pending litigation that could proceed if the Court left the limitation action for another day. Second, Kilroy's argument could apply to any limitation of liability action – a federal court could stay its hand based on the possibility that a plaintiff would fail to recover an amount that exceeded the liability fund. But a party permitted to file a limitation of liability action has a limited time in which to do so, presumably to permit the issues to be adjudicated quickly. Furthermore, allowing a jury to decide Kilroy's claims would turn the rules on their head by essentially enjoining a limitation action until it proved necessary. But once a limitation action has been brought and a limitation fund created, "all claims and proceedings against the owner related to the matter in question shall cease." 46 U.S.C. § 30511. This applies to actions brought under the

Jones Act. *See Pickle v. Char Lee Seafood, Inc.*, 174 F.3d 444, 450 (4th Cir. 1999) ("[T]he very language of [the Act] precludes the simultaneous trial of a limitation action and a Jones Act claim. . . .Thus, insofar as claimants proceed in a limitation-of-liability action, they are not entitled to a trial by jury, even if the basis of their claim for fault is made under the Jones Act."). Third, because Weeks Marine is contesting liability, this Court must address both the limitation issue and the issue of negligence. The Court sees no need to leave the parties adrift. Finally, there was an option available for Kilroy to have the injunction lifted and this matter returned to state court. Had the appropriate stipulations been presented to this Court, this case arguably could have been tailored to fit the single-claimant exception and the stay against litigation would have been lifted. The Court is not faulting Kilroy for failing to take this tack; the other claimants may have refused to proceed this way. But Kilroy cannot get the benefit of the single-claimant exception circuitously. If the limitation of liability action must proceed, it must do so now. If the limitation is later denied, Kilroy may be able to proceed with his action in state court before a jury. *See In re Pet. of Atlantis Fishing Fleet Corp.*, Civ. A. No. 01-8263, 2004 WL 3704912, at *3 (E.D.N.Y. Mar. 22, 2004).

Kilroy's final argument, that this Court should dismiss Weeks Marine's petition because the accident occurred with the privity or knowledge of Weeks Marine, is a matter to be stowed until the bench trial.

**IV.    CONCLUSION**

Although the trial is not in the offing, this issue is now squared away: the litigation will proceed as a bench trial. An Order consistent with this Memorandum will be docketed separately.