IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN THE MATTER OF THE PETITION | : | |
| OF WEEKS MARINE, INC. AS OWNER | : | CIVIL ACTION |
| OF THE VESSEL "WEEKS 573" FOR | : | |
| EXONERATION FROM AND | : | |
| LIMITATION OF LIABILITY | : | NO.   10-1794 |

## MEMORANDUM AND ORDER

**JACOB P. HART**
**UNITED STATES MAGISTRATE JUDGE**                                February 10, 2012

Presently before the Court is a Motion to Enforce Settlement (Docket # 73), filed by Michael Kilroy (Kilroy), Claimant/Plaintiff in the above captioned matter.  For the reasons set forth below the Motion is GRANTED in part and DENIED in part.

### BACKGROUND

The negotiation of this Settlement began with a Settlement Conference held by the Court on October 26, 2011.  Kilroy claimed to have suffered injuries as a result of an accident that occurred on October 22, 2008, while he was working for Weeks Marine, Inc. (Weeks).  He sought damages from Weeks, and also from Hays Tug & Launch Service, Inc. (Hayes).

After a lengthy conference, agreement between the parties was reached, and the terms of that agreement were placed on the record.  The undersigned stated that the total settlement was for $290,000.   Hays was to pay $162,500 and Weeks was to pay $127,500.  Because there was also a pending Workers' Compensation Claim against Weeks before the United States Department of Labor under the Longshore & Harbor Workers' Compensation Act, (LHWCA), it was also part of the settlement that Weeks (self insured under the LHWCA) would waive its

$65,000 compensation lien, and Kilroy would make no claims for future compensation.

As is my custom, after reciting the terms of the settlement, I asked all parties to indicate if they were satisfied with the agreement. John Dooley, counsel for Kilroy, stated that there was an additional term – that Weeks would also pay for any outstanding, but unpaid medical bills that Kilroy incurred as a result of the accident. After hearing this modification, I asked Weeks' counsel, Ronald Betancourt, if he was satisfied with the terms, as clarified by Kilroy's counsel. Mr. Betancourt said "yes," but he too, added another provision - that $10,000 of Weeks' $127,500 share would be paid as settlement of the Workers' Compensation Claim. Mr. Dooley said that he understood the split. Finally, Robert White, counsel for Hays, said that his client was satisfied with the terms, as recited by everyone, subject only to the exchange of releases. I then thanked all parties for reaching a settlement, and closed the proceedings.

It wasn't long before trouble began. On November 22, 2011, I received a letter from Mr. Dooley, stating that Weeks' version of their release was not consistent with the settlement. He claimed that the Weeks release indicated that their payment to Kilroy was only $117,500, and that there was no mention of the $10,000 portion to settle the Workers' Compensation Claim. He also said that the release made no mention of Weeks paying the outstanding medical bills. By letter dated the same day from Mr. Betancourt, he stated that the Weeks release **did** include the following language pertaining to the unpaid medical bills:

> .....Weeks Marine, Inc. agrees to pay all reasonable and outstanding invoices for past medical costs for reasonable and necessary medical treatment related to the October 22, 2008 incident.

Mr. Betancourt's letter said nothing about the missing $10,000 Workers' Compensation Claim.

Faced with dueling letters, on November 30, 2009, I held another settlement conference,

this time by phone.  At the end of this conference, again I assumed this case was finally resolved.  During the conference, the parties agreed that Mr. Kilroy would sign two separate releases.  One would be for the $117,500 paid to settle the federal case.  The other would be for the $10,000 paid to settle the Workers' Compensation case.  In addition, even though Weeks said nothing on October 26 about the need for the unpaid medical bills to be "reasonable and necessary," Kilroy agreed to Weeks' "reasonable and necessary" language, with this additional sentence: "All disputes related to medical costs in this regard will be submitted to Magistrate Judge Hart for resolution."

We come, at last, to the present Motion.

As I expected, the parties did not agree on the medical bills.  Kilroy claims that all of the unpaid medical bills, totaling $10,579.22, are both reasonable and necessary.  Weeks claims that none of the bills are reasonable and necessary.

However, what I did not expect was that Weeks still has not paid the $10,000 Workers' Compensation settlement.  Weeks agrees that this money has not been paid, but now claims, for the first time, that they are not permitted to pay it unless and until the Workers' Compensation settlement is approved either by the District Director of the United States Department of Labor or an administrative law judge.  As of today, there has been no such approval.  This new requirement was never mentioned to the Court.  It was never mentioned on the record on October 26, 2011, nor was it mentioned during our November 30, 2011 phone conference.

I shall deal with these two problems, *seriatim.*

## THE MEDICAL BILLS

The release signed by Kilroy, following our November 30, 2011 telephonic

settlement conference included a clause in which Kilroy released all claims against Weeks for any past and future medical treatment for injuries sustained on October 22, 2008, with one carefully worded exception. That exception stated:

> Notwithstanding the foregoing and as agreed before Magistrate Jacob Hart, Weeks Marine, Inc. agrees to pay all **reasonable and outstanding** invoices for past medical costs for **reasonable and necessary** medical treatment related to the October 22, 2008 incident. All disputes related to medical costs in this regard will be submitted to Magistrate Judge Hart for resolution.

(Emphasis added)

Kilroy submitted bills from four providers, totaling $10,579.22. The providers and bills are as follows:

| Provider | Amount |
|---|---|
| Dr. James D. Brady | $5255.00 |
| Dr. Anca Bereanu, M.D., PC | $2407.22 |
| Thomas C. Peff, M.D. | $ 345.00 |
| Doylestown Rehab Sport Medical Center | $2472.00 |

Weeks claims that none of these bills are reasonable and necessary. It is, therefore, up to me to resolve this controversy.

In support of its position, Weeks has submitted to the Court an affidavit from Thomas F. Langan. Mr. Langan was the client representative present for Weeks at our first Settlement Conference on October 26, 2011. In his affidavit, Mr. Langan states:

> The only fees I agreed to pay as part of the settlement were any reasonable outstanding fees **for authorized providers** or medically necessary services **rendered prior to the point claimant reached maximum medical improvement.**

(Emphasis added)

Mr. Langan's statement is incorrect. At no time during the Settlement Conference that I chaired

on October 26, 2011, or the telephonic Settlement Conference on November 30, 2011, did either Mr. Langan or his counsel limit Weeks' agreement either to "authorized providers" or services "rendered prior to the point claimant reached maximum medical improvement." To the contrary, Weeks agreed to pay **all** unpaid medical bills, so long as they were "reasonable and necessary."

The terms "authorized providers" and "maximum medical improvement" may be terms found in the LHWCA, but they are not terms or concepts ever discussed during either of the two settlement conferences that were conducted by this Court. Accordingly, I shall resolve the medical bills controversy without regard to whether the medical providers were authorized under the LHWCA or whether the services were provided after January 28, 2009, the date on which John R. Duda, M.D., an orthopedic surgeon selected by Weeks, examined Kilroy and determined that, as of that date, he had reached "maximum medical improvement."

DR. JAMES D. BRADY

Dr. Brady is a chiropractor. He first saw Kilroy on January 26, 2009. In his initial report following that visit, Dr. Brady stated:

> The patient has no other history of auto or work related injuries or of neck or back pain. The patient was completely symptom-free of all of his symptoms prior to his accident of October 22, 2008.

This statement could not be further from the truth. In fact, Kilroy had been seeing another chiropractor, Thomas D. Barnes, D.C., for almost three months prior to the accident. He first saw Dr. Barnes on July 25, 2008. In his report of that visit, Dr. Barnes states:

> The above named patient enters the office today with multiple levels of complaints. He states his main complaint is pain in his lower back, right upper back right shoulder

and right elbow.  He also complains of general neck stiffness but no acute pain.  After that first visit, Kilroy continued to see Dr. Barnes weekly, and actually saw him on October 21, 2008 – the day before his accident!  He continued to see Dr. Barnes after his accident, making his last visit on December 16, 2008.

Weeks has also presented to the Court, records on Kilroy from the Medical Rehabilitation Centers of Pennsylvania (MRCP), dating back to October 18, 2007 when he was involved in an automobile accident.  Kilroy had numerous treatment sessions at MRCP, as well as MRIs and visits to medical doctors, all of which indicated  neck, back and shoulder pain.

Based on this history, I find that Kilroy's treatments with Dr. Brady were in connection with pre-existing conditions, and were not necessary to cure the injuries sustained in the accident.  Weeks is not obligated to pay Dr. Brady's bills.

DR. ANCA BEREANU

Dr. Bereanu is a neurologist to whom Kilroy was referred by Dr. Brady. She saw Kilroy from February 19, 2009 to August 30, 2010.

According to plaintiff's counsel, Kilroy saw Dr. Bereanu "for his back injury, neck pain radiating into his right shoulder causing intense paresthesias, pain into his right upper extremity, ankle pain, cognitive defects and headaches."  Since I have already ruled that the medical services rendered by Dr. Brady related to pre-existing conditions, I likewise find that Dr. Bereanu's treatment of Kilroy for back, neck and shoulder were also related to pre-existing conditions.  Although Kilroy's ankle injury was caused by the accident, Dr. Bereanu's treatment for ankle pain appears to be slight.  Moreover, in her February 19, 2009 report, while she does

note that Kilroy has not yet reached maximum medical improvement, that conclusion is limited to the upper thoracic area, right shoulder and cervical areas. His ankle is not mentioned. I therefore find that her ankle treatment, if any, was not necessary.

As for Dr. Bereanu's treatment of Kilroy for cognitive defects and headaches, I find that these treatments were neither necessary nor reasonable. Prior to seeing Dr. Bereanu, Kilroy was treated by another neurologist, David C. Weisman of Abington Neurological Associates. On January 29, 2009, less than a month before Kilroy began seeing Dr. Bereanu, Dr. Weisman wrote a report to Kilroy's primary treating physician, Thomas C. Peff, M.D. In that report, Dr. Weisman concluded that, while Kilroy had post-concussive syndrome, "the only thing we can do for a post-concussive syndrome is symptomatic management...." I credit Dr. Weisman's diagnosis and recommended treatment, and therefore find that Kilroy's subsequent treatment by Dr. Bereanu was not necessary. Weeks is not obligated to pay Dr. Bereanu's bills.

THOMAS C. PEFF, M.D.

Dr. Peff was Kilroy's primary treating physician. Weeks paid all of his bills, except the last three. Although Dr. Peff treated Kilroy, at least in part, for shoulder and neck pain, Weeks paid these bills without protest until three visits that occurred after Dr. Duda opined that Kilroy had reached maximum medical improvement. Since the Court is not bound by Dr. Duda's conclusions, and since at least one of Kilroy's unpaid visits was for a lower leg contusion, the Court finds that Dr. Peff's final three treatments were reasonable and necessary. Weeks shall pay Dr. Peff's bills for $270.00.

<u>DOYLESTOWN REHAB SPORT MEDICAL CENTER</u>

Both sides seem to agree that Kilroy's visits to the Doylestown Rehab Sport Medical Center were related primarily, if not exclusively, to the ankle and leg injuries that were caused by the accident. Kilroy was referred to Doylestown by Dr. Peff, and Weeks paid for all of Kilroy's visits until Dr. Duda determined that Kilroy had reached maximum medical improvement. The Court agrees with Dr. Peff's assessment that Kilroy needed more treatments at Doylestown, and therefore finds that his remaining unpaid treatments were reasonable and necessary. Weeks shall pay Doylestown's bills for $2298.12.

The total amount of the medical bills that Weeks must pay is $2568.12

## THE WORKERS' COMPENSATION SETTLEMENT

Throughout the settlement discussions in this case, Weeks always proposed that $10,000 of the $127,500 it would pay to Kilroy, as Weeks total share of the $290,000 settlement, would be based on a settlement of Kilroy's Workers' Compensation Claim. At no time did Weeks or its counsel ever suggest to Kilroy or to the Court that the $10,000 Workers Compensation settlement could not be paid until it was approved the United States Department of Labor. This requirement was first raised in Weeks response to Kilroy's present motion.

Not only was the Department of Labor approval never mentioned, at the conclusion of our November 30, 2011 telephonic settlement conference counsel for Weeks agreed that Kilroy would be paid all of his money within five days after he signed his releases.

As it turns out, the document that was presented to Kilroy to sign in connection with the

$10,000 Workers' Compensation settlement was not a release at all. Rather it was an Application for Approval of the Settlement pursuant to Section 908(i) of the LHWCA. On behalf of Kilroy, that application was to be signed by his workers' compensation counsel, Daniel J. Boyce, Esq. The application clearly required approval by the DOL, before any money could be paid.

The Court has now spoken to Mr. Boyce. He confirmed that Weeks is correct when it states to the Court that the $10,000 requires DOL approval in order to be paid. As of today, the application has not been signed, nor has it been submitted to the DOL. Once the application is submitted, the LHWCA states that, if the parties are represented by counsel, the settlement shall be deemed approved if it is not specifically disapproved within 30 days of submission.

While Weeks is correct as to the law, the Court finds that Weeks' decision not to advise the Court of this requirement during either of our settlement conferences, whether intentional or simply neglectful, is inexcusable. This is particularly so in light of the specific discussion we had on November 30 concerning when Kilroy would receive his money.

Obviously, the Court will not require Weeks to violate the law. However, the Court will require Weeks to deposit $10,000 into the Registry of the Court no later than February 15, 2012. This money will remain with the Court until the DOL approves the settlement. Once we have been notified by Weeks and Kilroy that this has occurred, we shall release the money, with interest, to Kilroy.

An appropriate ORDER follows: